## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

DIQUAN BOOKER,

                                        Plaintiff,

   v.                                                         9:22-CV-600 (GTS/ATB)

FLINT, et al.,

                                        Defendants.

---

DIQUAN BOOKER, Plaintiff pro se
RACHAEL OUIMET, Asst. Attorney General, for Named Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

Presently before the court is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56 (Dkt. No. 24), which was referred to me for Report and Recommendation by the Honorable Glenn T. Suddaby, United States District Judge. Plaintiff has responded in opposition to the motion in a series of letters and "responses." (Dkt. Nos. 26, 27, 28, 29, 30, 37, 39, 50). Plaintiff has also since filed a motion for summary judgment, for which defendants' deadline to respond is still pending as of the date of this order and report-recommendation. (Dkt. No. 49). For the reasons set forth below, the court will recommend denying defendants' summary judgment motion, which argues that plaintiff's complaint should be dismissed based on his failure to exhaust administrative remedies.

**I.**   <u>**Amended Complaint**</u>

At all times relevant to the amended complaint, plaintiff was an inmate housed at

Washington Correctional Facility ("Washington C.F.") in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). On April 27, 2022,[1] plaintiff was allegedly assaulted by defendant Correctional Officer ("C.O.") Murphy while en route to the law library. (Amended Complaint ("AC") at 4). Plaintiff specifically alleges that he was "choked almost to death" by C.O. Murphy, and that although plaintiff's "eyes [were] closing up" and he was "shak[ing]," C.O. Murphy "still would not let go of [plaintiff]." (*Id.*). C.O. Murphy also hit plaintiff with plaintiff's boot. (*Id.*).

Plaintiff alleges that C.O. Murphy told defendant Sergeant ("Sgt.") Flint that he choked plaintiff because plaintiff "gave the [sergeant] at the other prison a iphone charger," which "the other officer gave to a bloods gang inmate." (AC at 4). Plaintiff claims that C.O. Murphy "found out" about the iphone charger, and "tr[ied] to kill" plaintiff. (*Id.*). C.O. Murphy then told plaintiff that if he tried to grieve the assault, "it's retaliation[.]" (*Id.*).

Some time after the alleged assault, plaintiff "called outside investigation 444[.]" (AC at 4). Apparently, an investigator came to speak with plaintiff, at which time plaintiff "let her know everything, even when [C.O. Murphy] took [his] court papers and told [plaintiff] to suck his dick to get them back[.]" (*Id.*). Plaintiff also told the investigator that C.O. Murphy wrote "I love cock" on plaintiff's identification card. (*Id.*). C.O. Murphy allegedly asked plaintiff to perform oral sex "to get [his] identification] card back[.]" (*Id.*).

---

[1] In the amended complaint, plaintiff states that the underlying incident occurred on April 27, **2002**, however it is clear from plaintiff's other filings that this was a typographical error.

Plaintiff alleges that he went to "medical" "days later" and told them he was "choked almost [to] death," and that his neck was swollen and hurting. (AC at 5).

## II. Summary Judgment

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369

3

U.S. 654, 655 (1962); *Salahuddin*, 467 F.3d at 272.

Local Rules of the Northern District of New York require that a motion for summary judgment be accompanied by a statement of material facts which sets forth, in numbered paragraphs, "a short and concise statement of each material fact about which the moving party contends there exists no genuine issue." Local Rule 56.1(a).[2] The same rule requires the opposing party to file a response to the moving party's statement of material facts, which admits or denies each of the moving party's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issues arise.  Local Rule 56.1(b).  The rule specifically provides that "[t]he Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." *Id.*   However, "[w]here the party opposing summary judgment is proceeding *pro se,* the court must read his opposition papers "liberally and interpret them to raise the strongest arguments that they suggest." *Rodriguez v. C.O. Reppert*, No. 14-CV-671, 2016 WL 11483439, at *2 (W.D.N.Y. Sept. 28, 2016); *Cucchiara v. Dumont*, No. 9:18-CV-0182 (GLS/CFH), 2019 WL 2516605, at *3 (N.D.N.Y. Apr. 26, 2019), report and recommendation adopted, 2019 WL 2514234 (N.D.N.Y. June 18, 2019) ("Although the defendant argues, and the Local Rules provide, that the Court shall deem admitted any facts the nonmoving party fails to "specifically controvert," *pro se* plaintiffs are afforded special solicitude in this District and within the Second Circuit.").

---

[2] Previously Local Rule 7.1(a)(3).

## III. Exhaustion of Administrative Remedies

### A. Legal Standards

The Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action. The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim. *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004), (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002)), abrogated on other grounds by *Ross v. Blake*, 578 U.S. 632 (2016). Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

In order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. *Woodford,* 548 U.S. at 90-103.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Incarcerated[3] Grievance Resolution Committee ("IGRC"). N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the

---

[3] This committee was formerly known as the "Inmate Grievance Resolution Committee," but has recently been renamed.

5

IGRC may be appealed to the Superintendent of the Facility. *Id*. § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id*. § 701.5(d). The court also notes that the regulations governing the Incarcerated[4] Grievance Program ("IGP") encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility). There is also a special section for complaints of harassment. *Id*. § 701.8. Complaints of harassment are handled by an expedited procedure which provides that such grievances are forwarded directly to the Superintendent of the facility, after which the inmate must appeal any negative determination to the CORC. *Id.* §§ 701.8(h) & (I), 701.5.

Prior to *Ross v. Blake, supra*, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006) (citing *Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004). The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement. *Id.*

In *Ross*, the Supreme Court made it clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances." *Ross v. Blake*, 578 U.S. 632, 640

---

[4] The program was formerly known as the "Inmate Grievance Program," but has recently been renamed.

(2016). "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." *Riles v. Buchanan*, 656 F. App'x 577, 580 (2d Cir. 2016) (quoting *Ross*, 578 U.S. at 639). Although *Ross* has eliminated the "special circumstances" exception, the other two factors in *Hemphill* – availability and estoppel – are still valid. The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability. *Ross*, 578 U.S. at 642. Courts evaluating whether an inmate has exhausted his or her administrative remedies must also consider whether those remedies were "available" to the inmate. *Id.*; *see also Riles*, 2016 WL 4572321 at *2.

### B. Analysis

Defendants are presently seeking summary judgment in a pre-discovery motion pursuant to Fed. R. Civ. P. 56, which they have filed in lieu of an answer. The parties do not dispute that plaintiff failed to exhaust his administrative remedies, to the extent plaintiff never completed the first step of the IGP with respect to his underlying assault claim against C.O. Murphy and Sgt. Flint. (Dkt. Nos. 24-3 at ¶¶ 13-14, Ex. A; 24-4 at ¶¶ 19-22; 26). Thus, the inquiry turns on whether plaintiff's administrative remedies were unavailable under *Ross*.

An administrative remedy may be unavailable when: (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates

7

from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Williams v. Priatno*, 829 F.3d 118, 123-24 (2d Cir. 2016) (quoting *Ross*, 136 S. Ct. at 1858-1861). "The test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would a similarly situated individual of ordinary firmness have deemed them available." *Hemphill v. New York*, 380 F.3d at 688 (2d Cir. 2004) (internal quotation marks omitted).

The court liberally construes plaintiff's various submissions to raise the argument that his administrative remedies were unavailable pursuant to *Ross*. In the amended complaint, plaintiff alleges that after "try[ing] to kill" him, C.O. Murphy stated "if [you] grieve it [sic] it's retaliation[.]" (AC at 4). In his numerous submissions filed in response to the instant summary judgment motion, plaintiff consistently alleges that C.O. Murphy told plaintiff "it will be retaliation if [you] grieve[,]" and describes his fear of being "murdered" if he filed a grievance, based on C.O. Murphy's purported threat. (Dkt. Nos. 26, 27, 28, 29 at 4, 37, 39, 50).

In further support of his argument that C.O. Murphy threatened plaintiff if he filed a grievance concerning the alleged assault, plaintiff has submitted a copy of an April 28, 2022 letter he wrote to the Office of Special Investigations ("OSI"). (Dkt. No. 37 at 5). In this letter, prepared the day after C.O. Murphy's alleged assault, and stamped as received by OSI on May 10, 2022, plaintiff states

> . . . I was choked out assaulted by one of the officer[s] may you move me to another facility thanks this happen for no reason write back or please move me from Washington [C.F.] thank you he said it will be retaliation if I grieve it. He won't give me badge [number], I think his name is Murphy.

8

(*Id.*).

A plaintiff is estopped from exhausting his administrative remedies where "defendants acted affirmatively to prevent an inmate from availing him or herself of the grievance procedures." *Pridgen v. Beatie*, 9:16-CV-535 (DNH/CFH), 2018 WL 1402049, at *8 (N.D.N.Y. Jan. 17, 2018) (citations omitted). Defendants "act affirmatively" to intimidate by making verbal and physical threats of retaliation, physically assaulting the plaintiff, denying him grievance forms or writing implements, or transferring the plaintiff. *Id.* (citations omitted). Thus, specific threats of retaliation or intimidation by prison employees can render administrative remedies unavailable. *Ross*, 136 S. Ct. at 1860, n.3.

Alternatively, "generalized fear of retaliation is insufficient to overcome a failure to exhaust administrative remedies." *Salmon v. Bellinger*, No. 9:14-CV-0827 (LEK/DJS), 2016 WL 4411338, at *5 (N.D.N.Y. July 5, 2016)); *see also Thompson v. Kelly*, No. 9:18-CV-1235 (LEK/DJS), 2019 WL 2374119, at *4 (N.D.N.Y. Apr. 4, 2019) (finding the plaintiff "merely stated a 'generalized fear of retaliation,' without allegations of any specific threats or other actions that would prevent him from filing a grievance") (collecting cases), *report-recommendation adopted,* 2019 WL 2371607 (N.D.N.Y. June 5, 2019); *Rodriguez v. Cty. of Suffolk*, No. CV 13-2070, 2014 WL 3531897, at *5 (E.D.N.Y. June 30, 2014) ("Courts tend to find mere 'generalized fear' when no actual threat was made." (quoting *Brown v. Napoli*, 687 F. Supp. 2d. 295, 297 (W.D.N.Y. Sept. 18, 2009)). "Fear of retaliation is deemed general when the fear is unrelated to personal threats or intimidation connected to the grievance process." *Gunn*

9

*v. Ayala*, No. 20-CV-840, 2023 WL 2664342, at *9 (S.D.N.Y. Mar. 28, 2023) (citing *Medina v. Kaplan*, No. 16-CV-7223, 2018 WL 797330, at *5 (S.D.N.Y. Feb. 8, 2018) ("Conclusory allegations of intimidation are insufficient to establish the unavailability of administrative remedies . . . . There is no allegation that the threat was even related to her grievance and ability to exhaust available administrative relief.").

Although perhaps thin, at this juncture the court finds that plaintiff has alleged more than a "generalized fear of retaliation" that raises a sufficient question of material fact as to whether administrative remedies were available to him. The defendants' motion is based solely on plaintiff's failure to file an initial grievance and his premature filing of a civil complaint; facts which are not in dispute. Defendants have not, however, responded to plaintiff's specific argument that he was thwarted from taking advantage of the grievance process when C.O. Murphy allegedly stated, in conjunction with his physical assault of plaintiff, that any attempt to file a grievance would involve "retaliation." If true, it is certainly plausible that C.O. Murphy's conduct could deter a similarly situated prisoner of ordinary firmness from attempting to file a grievance. *See Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 312 (2d Cir. 2020) ("On this issue, we have noted that 'threats or other intimidation by prison officials may well deter a prisoner of 'ordinary firmness' from filing an internal grievance, but not from appealing directly to individuals in positions of greater authority within the prison system, or to external structures of authority such as state or federal courts.' "). Accordingly, and resolving all ambiguities and drawing all reasonable inferences in the non-moving party's favor, the court finds that there are unresolved issues of material fact regarding availability of

administrative remedies under *Ross* precluding summary judgment in defendants' favor on exhaustion grounds.

In the alternative to summary judgment, defendants have requested "an evidentiary hearing to determine whether plaintiff properly exhausted his administrative remedies." (Def. MOL at 9) (Dkt. No. 24-1).  In *Messa v. Goord*, the Second Circuit held that factual disputes regarding exhaustion under the PLRA need not be decided by a jury, and may properly be decided by the court following an evidentiary hearing.  652 F.3d 305 (2d Cir. 2011).  Here, because discovery has not started, it may be appropriate to delay an evidentiary hearing, at least until some limited discovery on the issue of exhaustion is conducted.[5]  *See, e.g., Johnson v. Owens*, No. 9:20-CV-0982(LEK/CFH), 2022 WL 958127, at *7 (N.D.N.Y. Mar. 30, 2022); *Bailey v. Fortier*, No. 09-CV-742, 2013 WL 310306, at *1 (N.D.N.Y. Jan. 25, 2013) ("Bailey was granted limited discovery on the issue of exhaustion, which culminated in an evidentiary hearing.").

**WHEREFORE**, based on the above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 24) be **DENIED**, and it is further

**RECOMMENDED,** that if the district judge adopts this report-recommendation, the case be referred back to me for overseeing pretrial discovery, and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation on the parties in accordance with the local rules.

---

[5]Because C.O. Murphy's alleged assault of plaintiff is central to the merits of the excessive force claim against him **and** relevant to the exhaustion issue, it may be more efficient to delay an exhaustion hearing until all discovery is completed and/or for the district court to address the exhaustion issue based, in part, on trial testimony.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Dated: April 11, 2023

_____
Andrew T. Baxter
U.S. Magistrate Judge