**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

DIQUAN BOOKER,

                    Plaintiff,

          -v-                                             9:22-CV-600 (AJB/DJS)

JOSHUA FLINT and
MARK MURPHY,

                    Defendants.

_____

**APPEARANCES:**                                    **OF COUNSEL:**

BARCLAY DAMON LLP                          KAYLA A. ARIAS, ESQ.
Attorneys for Plaintiff
Barclay Damon Tower
125 East Jefferson Street
Syracuse, NY 13202

NEW YORK STATE                                 ALEXANDRA L. GALUS, ESQ.
OFFICE OF THE ATTORNEY GENERAL    KONSTANDINOS D. LERIS, ESQ.
Attorneys for Defendant
New York State Capitol
Albany, NY 12224

**Hon. Anthony Brindisi, U.S. District Judge:**

<u>**DECISION and ORDER**</u>

## I.    INTRODUCTION

Diquan Booker ("plaintiff") has filed this 42 U.S.C. § 1983 action alleging that Mark

Murphy and Joshua Flint (together, "defendants"), both New York State Department of

Corrections and Community Supervision ("DOCCS") corrections officers at the Washington

Correctional Facility ("Washington C.F.") at the time of the incident, violated his constitutional

rights by assaulting him and failing to report the incident or pursue disciplinary measures.

More specifically, plaintiff claims that on April 27, 2022, Officer Murphy choked him, beat him with a boot, and then told Sergeant Flint, who had seen the attack, that he did so because plaintiff had given a corrections officer at a different facility a phone charger. Plaintiff later sought medical attention and reported the incident to the Office of Special Investigations ("OSI"). But he did not follow DOCCS's grievance protocols for reporting the alleged assault, since, he maintains, Officer Murphy threatened that he would retaliate against him for doing so.

Defendants deny these allegations. Further, they argue that this action is precluded under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, because plaintiff failed to exhaust the available administrative remedies before filing a complaint. As such, this Court held an exhaustion hearing on May 16, 2025, and the parties submitted additional briefing afterwards.

After listening to and observing the demeanor of the witnesses as they testified, and upon consideration of their testimony, as well as all the credible evidence received at the exhaustion hearing, the relevant law, and the parties' post-hearing submissions, the Court finds that plaintiff failed to exhaust the applicable remedies, and that no factual basis exists to overcome defendants' affirmative defense of non-exhaustion.

## II.    BACKGROUND

On April 27, 2022, plaintiff was incarcerated at Washington C.F. in Comstock, New York. *See* Dkt. No. 19, Am. Compl. ("AC"), at 2. According to the amended complaint, plaintiff was walking to the facility's law library on that date when a corrections officer assaulted him. *Id.* at 4. The officer, whom plaintiff has identified as Officer Murphy, allegedly choked plaintiff, removed and took possession of one of his boots, and beat him with it. *Id.*

Plaintiff claims that, after the attack, Officer Murphy told another corrections officer, whom plaintiff has identified as Sergeant Flint, that he had targeted plaintiff because, when housed at another correctional facility, plaintiff had given a corrections officer an iPhone charger, which that corrections officer in turn gave to an unnamed inmate who was a member of the Bloods gang.  AC at 4.

Days later, plaintiff sought treatment at Washington C.F.'s medical unit.  AC at 5.  He told medical staff that he had been "choked almost [to] death."  *Id.*  After leaving the medical unit, plaintiff "called [for an] outside investigation," *id.*, which, as his testimony at the exhaustion hearing indicated, apparently meant that he had reported the matter to OSI.

Like other DOCCS facilities, Washington C.F. has an internal grievance process that allows inmates to raise concerns about corrections officers' behavior, among other things.  *See* Seguin Decl., Dkt. No. 24-3 ¶ 11.  Generally, this process entails submitting a written complaint to the facility's grievance clerk within 21 days of an incident, appealing any adverse decision of the facility's inmate grievance resolution committee to the facility's superintendent, and appealing any adverse decision of the superintendent to the central office review committee.  *Id.* ¶¶ 5–6; *see also* 7 N.Y.C.C.R. § 701.5.  Alternatively, if a grievance concerns "harassment," it undergoes an expedited process beginning with the superintendent.  7 N.Y.C.C.R. § 701.5.

Yet—despite describing the alleged attack to medical staff and reporting it to OSI— plaintiff never filed a written grievance in connection with the incident.  *See generally* AC.

Nevertheless, plaintiff pursued legal relief.  In the original complaint filed in the Southern District of New York, plaintiff, then representing himself *pro se*, alleged various violations of his constitutional rights by defendants and an additional corrections officer.  *See* Dkt. Nos. 1, 2.

Only the excessive-force and failure-to-protect claims against Officer Murphy and Sergeant Flint survived the motions practice that followed.  Dkt. No. 22.

On August 9, 2024, following the completion of discovery and the denial of their motion for summary judgment, defendants requested an exhaustion hearing.  Dkt. No. 88.  On January 24, 2025, this case was reassigned from U.S. District Judge Glenn T. Suddaby to this Court, Dkt. No. 101, which subsequently scheduled an exhaustion hearing and appointed *pro bono* counsel for the proceeding, Dkt. No. 104.

The exhaustion hearing took place on May 16, 2025.  The parties submitted and/or stipulated to each other's exhibits, plaintiff testified on his own behalf, and Officer Murphy and Sergeant Flint testified for the defense.  *See* Dkt. Nos. 118–20, 122.  Following this Court's request, the parties submitted supplemental briefing after the hearing.  Dkt. Nos. 120, 122.

## III.    LEGAL STANDARD

The PLRA requires inmates to exhaust all available administrative remedies before suing prison officials in federal court.  42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) ("Exhaustion is mandatory—unexhausted claims may not be pursued in federal court.").  Therefore, subject to certain exceptions, an inmate's failure to exhaust subjects his claims to dismissal.  *See, e.g.*, *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

In determining administrative grievance procedures' specific requirements, *i.e.*, deciding what constitutes exhaustion, courts defer to prison systems.  *Jones v. Bock*, 549 U.S. 199, 218

(2007) ("[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."); *Taylor v. N.Y. City Dep't of Corr.*, 849 F. App'x 5, 7 (2d Cir. 2021) (summary order) ("The PLRA provides that an inmate . . . must exhaust administrative remedies and must do so in 'compliance with an agency's deadlines and other critical procedural rules.'") (quoting *Woodford*, 548 U.S. at 90).

The Supreme Court has recognized three exceptions to the exhaustion requirement, each pertaining to the "'availab[ility]' of administrative remedies." *Ross v. Blake*, 578 U.S. 632, 642 (2016). These include unavailability due to administrative remedies' "operat[ion] as a simple dead end," their "be[ing] so opaque that [they] become[ ] . . . incapable of use," and prison administrators' interference "through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643–44. Whether remedies are available is "an objective [test]: that is, would a similarly situated individual of ordinary firmness have deemed them available." *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 311–12 (2d Cir. 2020) (citation omitted).

As to the exception for "machination, misrepresentation, or intimidation," the Second Circuit has observed that "a *generalized* fear of retaliation [ ] is insufficient as a matter of law to support a finding that the grievance process was unavailable in order to overcome [a] failure to exhaust administrative remedies under the PLRA," but suggested that "fears related to threats or intimidation *in connection with the grievance process itself*," instead, may suffice. *Lucente*, 980 F.3d at 312 (emphases added). So, "a plaintiff inmate's knowledge of threats or violence . . . by prison officials could plausibly constitute intimidation that would satisfy the objective standard where that conduct was based upon a grievance or complaint . . . or could reasonably be viewed, in light of the full circumstances, as an attempt to silence that inmate or others." *Id.* at 313.

Non-exhaustion is an affirmative defense under the PLRA.  *Hubbs v. Suffolk Cnty.*
*Sheriff's Dept.*, 788 F.3d 54, 59 (2d Cir. 2015) (explaining that defendants bear the burden of
proof, but plaintiffs can overcome a showing of non-exhaustion by putting on their own
evidence).  Thus, first, a defendant must show that a grievance process governs the dispute at
issue and that a plaintiff has failed to exhaust it.  *Id.*  In response, a plaintiff can show either
exhaustion or unavailability as outlined in *Ross* and its progeny.  *Bradshaw v. Piccolo*, 2025 WL
890415, *5 (W.D.N.Y. Mar. 24, 2025); *Smith v. Huggler*, 2023 WL 5097870, *5 (N.D.N.Y. Aug.
9, 2023).

## IV.    DISCUSSION

It is undisputed that plaintiff did not file a grievance regarding the alleged attack, so the
primary issue at this stage is whether administrative remedies were "available" to him.  *See Ross*,
578 U.S. at 642.  A preponderance of the credible evidence elicited at the exhaustion hearing
showed that administrative remedies were available and that plaintiff failed to exhaust them.

First, since non-exhaustion is an affirmative defense, defendants must show that
Washington C.F. offered administrative remedies that would have applied to plaintiff's claims.
*See Hubbs*, 788 F.3d at 594.  They have done so here.

The unrebutted evidence admitted at the hearing established that Washington C.F. has a
formal grievance process that allows inmates to raise concerns about corrections officers and
other confinement-related issues.  *See, e.g.*, Seguin Decl., Dkt. No. 24-3 ¶ 11 ("[While plaintiff
was housed at the facility], Washington C.F. had a fully functioning incarcerated grievance
process available to incarcerated individuals.").  This entails the three-tiered process outlined
above, including submission to the grievance clerk and review by the inmate grievance

resolution committee, superintendent, and central office review committee as applicable, as well as expedited review for complaints about harassment. *Id.* at ¶¶ 5–6; *see also* 7 N.Y.C.C.R. § 701.5. Plaintiff has not challenged the existence and applicability of this grievance process. As such, defendants have satisfied their initial burden.

Second, defendants must show that plaintiff did not exhaust the applicable administrative remedies. This is not in dispute, either. Plaintiff concedes that he did not pursue Washington C.F.'s grievance process in connection with the alleged incident. *See, e.g.*, Dkt. No. 122 at 2 (acknowledging that plaintiff did not file a grievance). Plaintiff testified as much at the hearing.

Third, to escape the exhaustion requirement, plaintiff must offer credible evidence to show either that he in fact exhausted the applicable administrative remedies or that they were unavailable to him. *See Bradshaw*, 2025 WL 890415, at *5. Since plaintiff has never claimed that he filed a grievance, unavailability is his only route around exhaustion.

Plaintiff has insisted, and indeed testified at the exhaustion hearing, that Officer Murphy threatened retaliation, rendering Washington C.F.'s grievance process unavailable to him and thus excusing him from the exhaustion requirement. *See* Dkt. No. 122 at 2 ("Given that Defendant Murphy explicitly threatened that Plaintiff would be retaliated against if he filed a grievance . . . Plaintiff had a reasonable fear of retaliation which prevented him from filing a grievance for the assault.").

But the preponderance of the credible evidence at the exhaustion hearing did not show that a similarly situated person of ordinary firmness would have considered Washington C.F.'s grievance process unavailable. Instead, the evidence showed that plaintiff merely failed to use it.

At the hearing, Officer Murphy credibly testified that, although he was employed as a corrections officer at Washington C.F. on April 27, 2022, the date of the alleged attack, he did not interact with plaintiff at all on that date, whether by physically attacking or threatening him, either generally or in connection with any grievance. Further, Officer Murphy credibly testified that he could recall no interactions whatsoever with plaintiff, and that he did not even recognize plaintiff as he sat across from him in the courtroom.

Similarly, Sergeant Flint credibly testified that, although he, too, was working at Washington C.F. on the date of the alleged attack, he neither recalled any prior dealings with plaintiff nor recognized him at the hearing. Sergeant Flint testified that he did not witness an assault of plaintiff on April 27, 2022, specifying that, if he had, he would have remembered it and reported it to superiors at the time. And he further testified that he did not witness Officer Murphy threaten plaintiff in connection with a grievance, noting that, if he had, he would have disciplined Officer Murphy and advised plaintiff on how to file a grievance.

Plaintiff also testified at the hearing. But his testimony did not credibly establish that the grievance process was unavailable, whether because he reasonably feared retaliation at the hands of Officer Murphy or for any other reason. Plaintiff testified that Officer Murphy attacked him on April 27, 2022, and threatened him with retaliation if he pursued the facility's grievance process. Accordingly, plaintiff maintains that his "fear of retaliation . . . was rooted in observable patterns of retaliation that an individual of ordinary firmness would appreciate." Dkt. No. 122 at 2; *cf.* Dkt. No. 120 at 1 (arguing plaintiff merely claimed to be "generally fearful of 'retaliation' were he to file a grievance").

Still, as defendants highlight in their supplemental briefing, plaintiff fatally undermined his credibility by offering vague and inconsistent accounts, on both direct and cross-examination,

of whether, when, and to whom he had reported the alleged attack and whether he had accurately recounted the events in question during his deposition in this case. *See* Dkt. No. 120 at 1. And plaintiff's testimony regarding how he came to learn Officer Murphy's identity—relying in part on another inmate's identification of him by means of a distinctive face covering that, according to plaintiff's later testimony at the hearing, Officer Murphy was not even wearing during the alleged attack—was equally, if not more, damaging to his credibility.

Furthermore, even accepting for the sake of argument that plaintiff feared retaliation from Officer Murphy in connection with filing a grievance, this fear did not inhibit plaintiff from discussing the alleged attack with others both inside and outside of Washington C.F., including medical staff and OSI. As defendants note, plaintiff's testimony on this point tends to undercut a finding of unavailability. Dkt. No. 120 at 2; *Snyder v. Whitter*, 428 F. App'x 89, 91–93 (2d Cir. 2011) (declining to recognize this exception where an inmate claimed to fear retaliation from one corrections officer but reported an alleged attack to others, including a superior officer and the inmate's physician); *accord Kearney v. Gebo*, 713 F. App'x 39, 42 (2d Cir. 2017) (summary order) (holding an inmate's decision to pursue an outside remedy, such as reporting to an external investigator, generally will not render unavailable an internal grievance process).

## V.    CONCLUSION

The preponderance of the credible evidence introduced at the exhaustion hearing clearly established that an administrative remedy, *i.e.*, Washington C.F.'s internal grievance process, existed, that this process governed the alleged incident, and that plaintiff failed to exhaust his remedies under this process. Nothing in the parties' submissions or the evidence elicited at the exhaustion hearing has persuaded the Court that this remedy was unavailable to a similarly situated person of ordinary firmness.

Accordingly, defendants have carried their burden in establishing that plaintiff failed to exhaust, and his claims must be dismissed.

Therefore, it is

ORDERED that plaintiff's amended complaint (Dkt. No. 19) is DISMISSED without prejudice for failure to exhaust his available administrative remedies before filing this action.

**IT IS SO ORDERED.**

Dated: June 12, 2025
        Utica, New York.

Anthony J. Brindisi
U.S. District Judge